# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

CHARLES WIGGLESWORTH,
     Petitioner,

v.
                            Case No. 5:24-cv-467-KKM-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS,
     Respondent.

_____

## **ORDER**

Charles Wigglesworth, a Florida prisoner, timely[1] filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state-court convictions for attempted sexual battery on a child under twelve and attempted lewd or lascivious molestation of a child under twelve. (Doc. 1.) Having considered the petition, (*id*.), the response in opposition,

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* 28 U.S.C. § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See id.* § 2244(d)(2). Wigglesworth was sentenced on January 11, 2021, and he did not file a direct appeal. (Doc. 7-1, Ex. A, 40–49.) His convictions thus became final on February 10, 2021, when the thirty-day appeal deadline expired. The limitation period started the next day. It ran for 333 days until January 10, 2022, when Wigglesworth moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.* at 1.) This filing stopped the clock. The postconviction court denied relief, and the appellate court affirmed. (*Id.* at 241–67; *see also id.*, Ex. E.) The mandate was issued on September 4, 2024, leaving thirty-two days to seek federal habeas relief. (*Id.*, Ex. H.) One week before the mandate was entered, however, Wigglesworth filed his federal habeas petition. (Doc. 1 at 1.) Therefore, the petition is timely.

1

(Doc. 6), and the reply, (Doc. 10), the petition is denied. Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

## I.    BACKGROUND

This case arises from Wigglesworth's sexual abuse of his two minor stepchildren. In March 2020, Wigglesworth touched and digitally penetrated the younger victim's vagina "while tucking her into bed." (Doc. 7-1, Ex. A, at 30, 73–75.) Later that evening, he performed the same acts "while consoling her after a nightmare." (*Id.* at 30–31, 73–75.) The disclosure of this abuse led the older victim to reveal that Wigglesworth had inappropriately touched her vagina three years earlier. (*Id.* at 30–31, 75–76.) Wigglesworth admitted to law enforcement that he had "rubbed [the younger victim's] vagina on the outside for five to ten seconds." (*Id.* at 154.)

For his abuse of the younger victim, Wigglesworth was charged with two counts of sexual battery on a child under twelve and two counts of lewd or lascivious molestation of a child under twelve. (*Id.* at 30–31.) For his abuse of the older victim, he was charged with one count of lewd or lascivious molestation of a child under twelve. (*Id.* at 31.) Each sexual

battery count carried "a mandatory sentence of life imprisonment." *Peters v. State*, 861 So. 2d 1236, 1237 n.1 (Fla. 2d DCA 2003). Each count of lewd or lascivious molestation carried "a mandatory minimum sentence of twenty-five years' imprisonment." *Rochester v. State*, 140 So. 3d 973, 973 (Fla. 2014).

Wigglesworth ultimately agreed to plead nolo contendere to attempted sexual battery on a child under twelve and attempted lewd or lascivious molestation of a child under twelve. (Doc. 7-1, Ex. A, at 34–38.) In exchange, he received an agreed-upon sentence of twenty years' imprisonment, followed by ten years of sex offender probation. (*Id.* at 40–49, 60.) At the time of sentencing, he was thirty-one years old. (*Id.* at 30, 40–49.) Wigglesworth did not appeal his convictions, but he did seek postconviction relief under Rule 3.850. (*Id.* at 1.) The postconviction court rejected his claims after an evidentiary hearing, and the appellate court affirmed without explanation. (*Id.* at 241–67; *id.*, Ex. E.) This federal habeas petition followed. (Doc. 1.)

## II.    STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354,

1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas

4

relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S.

6

at 125. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual

findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

## III.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Wigglesworth alleges ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of

8

the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel

9

because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   ANALYSIS

### A. Ground One—Failure to Pursue Double Jeopardy Claim

Wigglesworth argues that trial counsel was ineffective for failing to "advise" him of a "valid double jeopardy claim." (Doc. 1 at 5.) As noted above, the prosecution alleged that in March 2020, Wigglesworth touched and digitally penetrated the younger victim's vagina "while tucking her into bed," and then committed the same acts "while consoling her after a nightmare." (Doc. 7-1, Ex. A, at 30–31, 73–75.) For the digital penetration, Wigglesworth was charged with two counts of sexual battery. (*Id.* at 30–31.) For the touching, he was charged with two counts of lewd or lascivious molestation. (*Id.*)

Wigglesworth contends that double jeopardy would have barred his convictions for lewd or lascivious molestation because they arose from the same "criminal episode" as the sexual battery—that is, his "digital[] penetrat[ion]" of the younger victim's vagina "while simultaneously touching the exterior of the vagina by the same hand." (Doc. 1 at 5.)

10

According to Wigglesworth, counsel should have "advise[d] him of his potential double jeopardy claims" and moved to dismiss the lewd-or-lascivious-molestation counts. (Doc. 7-1, Ex. A, at 17.)

Counsel addressed these allegations at the evidentiary hearing. He testified that, after reviewing the evidence and discussing the case with Wigglesworth, he believed "the best way to proceed . . . was to . . . negotiate" a plea deal. (*Id.* at 185–86.) As counsel noted, Wigglesworth faced a "minimum mandatory [of] life in prison" if convicted of sexual battery. (*Id.* at 193.) Counsel was "concerned with the prospect of going to trial" because Wigglesworth—a former sheriff's deputy—had admitted to law enforcement that he rubbed the younger victim's vagina. (*Id.* at 182.) To avoid "exposure to an awful lot of jail time," counsel began plea negotiations with the prosecutor. (*Id.* at 184.) Wigglesworth agreed with this "strategic decision." (*Id.*)

Because the case was in a plea posture, counsel thought that pursuing a double jeopardy claim would not have been "productive." (*Id.* at 192.) First, even if the lewd-or-lascivious-molestation charges had been dismissed, Wigglesworth still would have faced two counts of sexual battery, each carrying a mandatory sentence of "life in prison." (*Id.*)

11

Second, filing a motion to dismiss could have negatively impacted the plea negotiations. (*Id.*) Thus, counsel believed that raising a double jeopardy claim "would have wasted time . . . because it wouldn't have gotten us anywhere." (*Id.*)

The postconviction court rejected Wigglesworth's ineffective assistance claim, finding that he "failed to meet his burden under *Strickland.*" (*Id.* at 245.) It credited counsel's testimony that a "motion to dismiss based on double jeopardy" would not have been "beneficial." (*Id.*) As the court explained, regardless of whether the motion succeeded, Wigglesworth "would still be facing life." (*Id.*) And "filing a motion to dismiss during plea negotiations would not have been productive to reach a resolution that kept [Wigglesworth] away from a minimum mandatory life sentence." (*Id.*) Moreover, "if the plea negotiations failed, the double jeopardy issue could be raised either pre-trial or after conviction before sentencing if the jury found [Wigglesworth] guilty." (*Id.*) Thus, the court held that counsel was not deficient for failing to pursue a double jeopardy defense. (*Id.*)

This ruling was reasonable. "[J]udicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of

12

trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls." *Bolender v. Singletary*, 16 F.3d 1547, 1557 (11th Cir. 1994). This principle of deference applies with equal force in cases involving plea deals because "[t]he art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision." *Premo v. Moore*, 562 U.S. 115, 125 (2011). To prevail on his ineffective assistance claim, Wigglesworth must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).

Wigglesworth cannot make this showing. Counsel made a reasonable, strategic decision to forgo a double jeopardy claim. He believed that—given the evidence against Wigglesworth and the possibility of a mandatory life sentence—"the best way to proceed . . . was to . . . negotiate" a plea deal. (Doc. 7-1, Ex. A, at 185–86.) In counsel's view, pursuing a double jeopardy claim would not have been "productive" because (1) even if successful, Wigglesworth still would have faced a mandatory life sentence for the sexual battery counts, and (2) filing a

13

motion to dismiss could have jeopardized the plea negotiations. (*Id.* at 192.) Counsel ultimately succeeded in negotiating a twenty-year plea deal on lesser charges, thus avoiding the mandatory life sentence Wigglesworth faced if convicted at trial. (*Id.* at 34–38.) "Giving great deference to [counsel's] decision," a fairminded jurist could agree "that it was not an unreasonable strategy for [counsel] to pursue the plea deal in lieu of a motion" to dismiss based on double jeopardy. *Norris v. United States*, No. 24-13306, 2025 WL 2700443, at *4 (11th Cir. Sept. 23, 2025).

Even apart from these strategic considerations, Wigglesworth's double jeopardy argument is meritless. For that reason, too, counsel was not deficient for failing to pursue it.[2] *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

"Florida courts apply the 'same elements' test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether multiple

---

[2] The postconviction court did not address the merits of Wigglesworth's double jeopardy argument. (Doc. 7-1, Ex. A, at 244–45.) But, in reviewing the reasonableness of the court's decision, I am "not limited by the particular justifications [it] provided" for finding that counsel was not ineffective. *Jennings*, 55 F.4th at 1292. Instead, I "may consider additional rationales that support [its] determination." *Id.*

14

convictions violate double jeopardy." *Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1056 (11th Cir. 2021). Under *Blockburger*, two offenses are different for double jeopardy purposes "if each requires proof of an additional fact which the other does not." *United States v. Smith*, 532 F.3d 1125, 1128 (11th Cir. 2008). "[I]f an offense requires proof of an element that the other offense does not, [a court] need look no further in determining that the prosecution of both offenses does not offend [double jeopardy]." *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir. 2017). "The *Blockburger* test is applied by analysis of the elements of the offense charged, not by focusing on the evidence" in the record. *United States v. Boldin*, 772 F.2d 719, 726 (11th Cir. 1985).

Wigglesworth could have been convicted of both sexual battery and lewd or lascivious molestation because each offense requires proof of facts that the other does not. Sexual battery "requires proof of either penetration or oral, anal, or vaginal union with the sexual organ of another, while establishing lewd or lascivious molestation requires proof of intentional touching of the breasts, genitals, genital area, or buttocks, or the clothing covering those areas." *Roughton v. State*, 185 So. 3d 1207, 1210 (Fla. 2016). Likewise, "[l]ewd or lascivious molestation requires

15

proof that the touching was done with a lewd or lascivious intent, while sexual battery may be committed without any proof of a specific sensual intent." *Id.* Thus, even if Wigglesworth's touching and penetration constituted a single act, counsel had no basis to raise a double jeopardy claim because "[e]ach offense requires proof of an element that the other does not."[3] *Id.*; *see also Kramer v. State*, 313 So. 3d 207, 211 (Fla. 1st DCA 2021) (defendant's "convictions for two counts of sexual battery and one count of lewd or lascivious molestation do not violate double jeopardy").

## B. Grounds Two and Three—Misadvice about Gain Time and Prison Visitation

Wigglesworth faults trial counsel for misadvising him about two aspects of his prison sentence. (Doc. 1 at 7–8.) First, counsel mistakenly told him he would be "eligible for gain time." (*Id.* at 7.) Based on this advice, Wigglesworth believed he could earn enough gain time to reduce his prison term by fifteen percent, resulting in a seventeen-year sentence

---

[3] The defendant in *Roughton* "was convicted of both sexual battery on a person under twelve . . . and lewd or lascivious molestation [of] a person under twelve . . . for the single act of placing his mouth on the seven-year-old victim's penis." 185 So. 3d at 1208. The Florida Supreme Court held that the defendant's "separate sentences for . . . sexual battery and lewd or lascivious molestation arising from a single act [did] not violate the prohibition against double jeopardy." *Id.* at 1210.

rather than a twenty-year sentence. (Doc. 7-1, Ex. A, at 138.) This belief turned out to be mistaken. After his arrival in prison, the Florida Department of Corrections (FDOC) informed Wigglesworth that he was ineligible for gain time because of his conviction for attempted sexual battery, a disqualifying offense under the gain time statute. (Doc. 7-1, Ex. A, at 139; *see also State v. Fureman*, 161 So. 3d 403, 407–08 (Fla. 5th DCA 2014); Fla. Stat. § 944.275(4)(e)1.)

Second, counsel "misadvised" Wigglesworth that his biological daughter would be allowed to visit him in prison if the trial court approved the request. (Doc. 1 at 8.) This, too, turned out to be mistaken. Under Florida law, any inmate convicted of "attempting to commit a sex act on . . . a child under the age of 16 years[] shall not be allowed visitation with anyone under the age of 18 years, unless special visitation is approved by the warden." Fla. Stat. § 944.09(1)(n). This statute does not give trial courts "the power to outright grant permission for special visitation." *Singletary v. Benton*, 693 So. 2d 1119, 1120 (Fla. 4th DCA 1997); *see also Singletary v. Carpenter*, 705 So. 2d 110, 110 (Fla. 2d DCA 1998) (finding "no legislative authority permitting the intervention of criminal trial judges" in FDOC decisions about whether "prisoners

17

convicted of enumerated sex offenses may enjoy visitation with minors"). According to Wigglesworth, the FDOC has not allowed his biological daughter to visit him in prison. (Doc. 7-1, Ex. A, at 145–46.)

The postconviction court rejected Wigglesworth's ineffective assistance claim for lack of "prejudice." (*Id.* at 246–47.) The court agreed that counsel's advice was mistaken. (*Id.*) And it acknowledged that Wigglesworth might have been "concerned with gain time and visitation with his newborn child" when he agreed to plead nolo contendere. (*Id.* at 246.) Nonetheless, Wigglesworth "failed to show prejudice" because he "ultimately decided to plea, not based on [counsel's] misadvice, but rather because he wanted to be able to come home" at a definite future date rather than risk a life sentence. (*Id.* at 246–47.)

This ruling was reasonable. To show prejudice in the plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "Courts should not upset a plea solely because of post hoc assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the

18

petitioner must "convince the court that a decision to reject [a] plea []
would have been rational under the circumstances." *Diveroli v. United
States*, 803 F.3d 1258, 1265 (11th Cir. 2015). Because AEDPA applies to
this claim, Wigglesworth must show that the postconviction court's
finding of no prejudice "was so obviously wrong that its error lies beyond
any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't
of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

He cannot make the required showing. As explained above,
Wigglesworth faced the possibility of a mandatory life sentence for each
sexual battery count. *See Peters*, 861 So. 2d at 1237 n.1. The risk of that
outcome was substantial, especially in the light of his admission that he
"rubbed [the younger victim's] vagina on the outside for five to ten
seconds." (Doc. 7-1, Ex. A, at 154.) At the evidentiary hearing,
Wigglesworth's girlfriend—the mother of his biological child—testified
that she urged him to plead nolo contendere because she wanted "a
guaranteed day that you come home." (*Id.* at 132.) Wigglesworth offered
the same rationale for taking the deal. Asked "why did you plea[d]," he
answered: "Because my family wanted me to be able to come home." (*Id.*
at 161–62.) As the postconviction court found, Wigglesworth's primary

19

motivation was to avoid spending the rest of his life in prison, which he accomplished by entering into the plea agreement. A fairminded jurist could conclude that—in the light of his overriding goal of avoiding a life sentence—Wigglesworth would have taken the twenty-year offer even if he had known of his ineligibility for gain time and visitation with his daughter. Therefore, Wigglesworth cannot show that the finding of no prejudice "was so obviously wrong that [the] error lies beyond any possibility for fairminded disagreement." *Mungin*, 89 F.4th at 1317; *see also Orange v. United States*, No. 16-12842-A, 2017 WL 5714719, at *4 (11th Cir. Jan. 6, 2017) (defendant "failed to establish prejudice" because guilty plea allowed him to "avoid[] a life sentence," and the government's case against him was strong); *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (no *Strickland* prejudice where "plea bargain lowered [defendant's] sentence of imprisonment by eight years").

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the

20

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Wigglesworth must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Wigglesworth has not made the requisite showing. Finally, because Wigglesworth is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Wigglesworth's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Wigglesworth and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Ocala, Florida, on February 20, 2026.

Kathryn Kimball Mizelle
United States District Judge

21